## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN X. LU, | Case No.: 1:24-cv-00459-RA-GS |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| -against- | |
| CHEER HOLDING, INC. (f/k/a Glory Star New Media Group Holdings Limited, | |
| Defendant. | |

## CHEER HOLDING, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

DATED: April 18, 2024

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Minyao Wang
NY State Bar No. 4744314
Alyssa J. Rodriguez
NY State Bar No. 6109821
77 Water Street, Suite 2100
New York, New York 10005
212.232.1300
Minyao.Wang@lewisbrisbois.com
Alyssa.Rodriguez@lewisbrisbois.com

*Attorneys for CHEER HOLDING, INC. (f/k/a Glory Star New Media Group Holdings Limited*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.      THERE IS NO PERSONAL JURISDICTION OVER CHEER HOLDING. ...................... 2

       A.     CPLR § 302(a)(1) does not apply here. ................................................. 2

       B.     Finding personal jurisdiction in these circumstances would violate due process ................................................................................................ 6

II.     THIS CASE SHOULD BE DISMISSED IN THE ALTERNATIVE ON *FORUM NON CONVENIENCE* GROUNDS ................................................................... 6

       A.     Mr. Lu's choice of this forum is entitled to minimum deference .......... 6

       B.     The Cayman Islands is an adequate alternative forum ......................... 7

       C.     Public interest factors weigh in favor of dismissing case .................... 7

       D.     Private interest factors weigh in favor of dismissing case ................... 9

CONCLUSION .................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Appaloosa Inv., L.P.I. v. J.P. Morgan Sec., Inc.*,
398 N.J. Super. 52, 939 A.2d 257 (Super. Ct. NJ 691App. Div. 2008) ...................................... 3

*Aquiline Capital Partners LLC v. Finarch LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012) ................................................................................. 2, 4

*Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP),
1999 U.S. Dist. LEXIS 2143 (S.D.N.Y. Mar. 1, 1999) ............................................................. 3

*Daniel v. Am. Bd. of Emergency Med.*,
988 F. Supp. 127 (W.D.N.Y. 1997) ......................................................................................... 5

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010) ..................................................................................... 4

*DiRienzo v. Philip Services Corp.*,
294 F. 3d 21 (2d Cir. 2002) ............................................................................................... 6, 8

*Fasano v. Yu*,
921 F.3d 333 (2d Cir. 2019) ................................................................................................... 7

*Freeman v. Bean*,
266 N.Y. 657 (1935) ............................................................................................................... 3

*Colbert v. Dougan*,
No. 23-cv-7297, 2024 U.S. Dist. LEXIS 49487 (S.D.N.Y. Mar. 20, 2024) .......................... 7, 8

*Holzman v. Guoqiang Xin*,
No. 12-cv-8405 (AJN), 2015 U.S. Dist. LEXIS 125518 (S.D.N.Y. Sep. 18, 2015) .............. 8, 9

*Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*,
628 F. Supp. 1447 (E.D.N.Y. 1986) ....................................................................................... 7

*Orlando v. Nxt-ID, Inc.*,
No. 1:20-cv-1604 (MKV), 2021 U.S. Dist. LEXIS 55677 (S.D.N.Y. Mar. 23, 2021) ............. 4

*Painewebber, Inc. v. Westgate Grp., Inc.*,
748 F. Supp. 115 (S.D.N.Y. 1990) .......................................................................................... 5

*Poms v. Dominion Diamond Corp.*,
2019 WL 2106090, 2019 N.Y. Slip Op. 31364(U) (N.Y. Sup Ct, New York County
May 15, 2019) ......................................................................................................................... 4

*In re Poseidon Concepts Sec. Litig.*,
2016 U.S. Dist. LEXIS 68127 (S.D.N.Y. May 24, 2016) .......................................................... 6

*In re Teekay Offshore Partners L.P. Common Unitholders Litig*.,
No. 19-CV-6483 (RA), 2021 U.S. Dist. LEXIS 62772 (S.D.N.Y. Mar. 31, 2021).................... 6

*Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*,
81 F.3d 1224 (2d Cir.1996) .................................................................................................... 8

*Sino Clean Energy Inc. v. Little*,
   35 Misc. 3d 1226[A], 953 N.Y.S.2d 553, 2012 NY Slip Op 50907[U], 2012 WL 1849658(Sup.
   Ct. N.Y. Cnty. May 21, 2012) ................................................................................................ 3

*New Asia Enters. v. Fabrique, Ltd.*
   2014 U.S. Dist. LEXIS 112438 (S.D.N.Y. Aug. 13, 2014)..................................................... 6

*Vogel v. Boris*,
   2023 U.S. Dist. LEXIS 151498 (S.D.N.Y. Aug. 24, 2023)..................................................... 3

*Warter v. Bos. Sec., S.A.*,
   380 F. Supp. 2d 1299 (S.D. Fla. 2004) ................................................................................. 10

**<u>Statutes</u>**

28 U.S.C. §1782............................................................................................................................ 10

**<u>Rules</u>**

CPLR § 302(a)(1) .................................................................................................................. 1, 2, 4, 5
CPLR § 302(a)(3) ........................................................................................................................... 2

## PRELIMINARY STATEMENT

Cheer Holding[1] is a Cayman-incorporated and China-based company that is traded on the NASDAQ Stock Exchange.  It was created as a result of two antecedent transactions on that Exchange.  TKK Symphony Acquisition Corporation ("Symphony"), a blank-check company, completed a $200 million IPO in 2018 (the "Symphony IPO").  In 2020, Symphony used the proceeds of that IPO to acquire Cheer Holding through a share exchange (the "Business Combination").  In 2022, the Buy-Out Group proposed to take Cheer Holding private.  The Special Committee, consistent with its rights under the Merger Agreement, terminated the Proposed Merger prior to its consummation.  Mr. Lu, a small Cheer Holding shareholder, asserts two **Cayman** claims arising from the Proposed Merger: that the Company (i) aided and abetted the breach of fiduciary duty, and (ii) committed negligence and gross negligence.

Cheer Holding has demonstrated in its motion (ECF No. 12) that this case should be dismissed for lack of personal jurisdiction and/or on *forum non conveniens* grounds.  Mr. Lu's Opposition (ECF No. 17) does not alter this result.  *First*, contrary to Mr. Lu's meandering and "anything-goes" arguments, neither the use of a New York proxy agent for ministerial tasks related to the listing of shares nor the retention of a third-party New York financial advisory firm for a transaction centered in China amounts to transacting business under CPLR § 302(a)(1).  Nor did Cheer Holding ever consent to New York jurisdiction for a dispute with Mr. Lu.  *Second*, Mr. Lu cannot negate *forum non conveniens* dismissal of his **Cayman** legal claims by invoking case law that addresses **U.S.** legal claims.  Mr. Lu also vastly inflates the volume of potential evidence that may be located in New York, and in any event, the ready availability of Section 1782 discovery (a process that Mr. Lu knows very well) to obtain U.S.-based evidence further supports dismissal.

---

[1] Undefined capitalized terms herein shall have the meanings ascribed to them in the Motion.

## ARGUMENT

### I.     THERE IS NO PERSONAL JURISDICTION OVER CHEER HOLDING.

#### A.     CPLR § 302(a)(1) does not apply here.

In response to Cheer Holding's Motion (*see* Mot. at 9 & 13), Mr. Lu does not argue that there is general jurisdiction over Cheer Holding or that Cheer Holding is subject to tort-based specific jurisdiction under CPLR § 302(a)(3).  Instead, Mr. Lu only asserts that there is specific jurisdiction under CPLR § 302(a)(1) because: (i) Cheer Holding's stock is traded on the NASDAQ Exchange; (ii) Cheer Holding supposedly has an account with JP Morgan Chase Bank in New York; (iii) Cheer Holding hired Continental Stock & Transfer & Trust ("Continental") as its proxy solicitation agent; (iv) Cheer Holding supposedly consented to jurisdiction through forum selection clauses; and (v) the Special Committee hired Benchmark Company, LLC ("Benchmark") as its financial advisor.  These scatter-shot approaches do not come close to satisfying § 302(a)(1).[2]

*First*, Mr. Lu concedes that listing shares in New York does not trigger § 302(a)(1).  *See* Oppo. at 10.  However, he tries to undo his concession by immediately stating that jurisdiction is proper because Cheer Holding conducted four public offerings here and tried to attract investors for those offerings.  *See id.* at 11.  This argument is squarely foreclosed by the case law already cited, *see* Mot. at 10-11.  Moreover, because Mr. Lu's claims arise from the Proposed Merger, neither the Symphony IPO nor the Business Combination would have the required nexus to this litigation, even if they were business transactions under 302(a)(1), which they are not.

*Second*, Mr. Lu suggests that Cheer Holding currently has a $200 million account with JP Morgan Chase in New York (Opp. at 9-10), but he is wrong.  *See* Tan Decl. ¶ 4.  Mr. Lu's mistake

---

[2] Not all "purposeful activity" falls within § 302(a)(1).  *Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (requiring a defendant's "direct and personal involvement" regarding a "substantial transaction of business" to trigger this provision).

stems from his failure to understand how a de-SPAC process works. *Vogel v. Boris*, 2023 U.S. Dist. LEXIS 151498, at *2-4 (S.D.N.Y. Aug. 24, 2023) (describing the process). Here, Symphony, a blank-check company, completed an IPO and the IPO proceeds were held in a trust account pending an acquisition. The IPO proceeds were used to effectuate the Business Combination, as Cheer Holding's public filings established. *See* Second Wang Decl., Exhibit 1 at 29.

*Third*, the allegations regarding Continental do not establish jurisdiction. Courts have consistently held that the retention of a proxy solicitation agent located in New York to complete ministerial tasks related to share listing does not constitute transacting business in New York.[3] Mr. Lu only alleges that Continental provided ministerial support. *See* ECF 18-1, 18-2 and 18-12.

*Fourth*, Mr. Lu points for the first time to choice-of law-provisions in two agreements that predate the Merger Agreement.[4] Even assuming (but not conceding) that this Court can consider

---

[3] *Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP), 1999 U.S. Dist. LEXIS 2143, at * 19 (S.D.N.Y. Mar. 1, 1999) ("The fact that a stock transfer agent is in New York does not confer jurisdiction."); *Sino Clean Energy Inc. v. Little*, 35 Misc. 3d 1226[A], 953 N.Y.S.2d 553, 2012 NY Slip Op 50907[U], 2012 WL 1849658, at * 8(Sup. Ct. N.Y. Cnty. May 21, 2012) ("New York courts have consistently held that 'a corporation is not doing business' in the State for purposes of conferring jurisdiction because its shares are listed on a stock exchange requiring the incidental maintenance of bank accounts for dividend payments, stock transfer agents and stock registrars"); *see id.* at *9 ("use of [a clearing house] is merely incidental to its alleged short sale transactions, and are no more sufficient to establish the requisite contacts with New York than the incidental use of bank accounts for dividend payments, stock transfer agents and stock registrars found insufficient to confer jurisdiction"); *Freeman v. Bean*, 266 N.Y. 657, 658 (1935) (the state's highest court reaffirming without opinion that there was no jurisdiction over a foreign corporation which had a "transfer agent and a registrar for the transfer and registration of its stock in New York."); *Appaloosa Inv., L.P.I. v. J.P. Morgan Sec., Inc.*, 398 N.J. Super. 52, 939 A.2d 257, 260 (Super. Ct. NJ 691App. Div. 2008) (noting that courts across the country agreed that the "use of agents to carry out ministerial activities required for maintenance of stock exchange listings" was not sufficient to establish jurisdiction").

[4] The Complaint alleges that Cheer Holding agreed to New York jurisdiction through the choice of law provision in the Merger Agreement. This is wrong because: (i) Mr. Lu was not a party to that agreement which expressly disclaimed third party beneficiaries; (ii) that choice of law clause directed "internal affairs" disputes back to the Cayman Islands; and (iii) other disputes under the Merger Agreement were to be resolved through arbitration in Hong Kong, not litigation in New York. Mot. at 14. Mr. Lu does not contest any of these points in his opposition.

newly raised jurisdictional allegations now *and* that this dispute fits within the scope of either agreement, there is still no jurisdiction.  The first agreement, the Share Exchange Agreement, was executed between Symphony and Cheer Holding to effectuate the Business Combination.  The Warrants Agreement, executed in 2018 as part of the Symphony IPO, was between Symphony and Continental.  Mr. Lu's reliance on these agreements suffers from the fatal defects that doomed his now-abandoned invocation of the choice of law clause in the Merger Agreement.  He was a party to neither agreement.  ECF No. 18-4 at 6; 18-6 at 1.  The Share Exchange Agreement barred third-party beneficiaries, except for certain indemnitee.  ECF No. 18-4 at 73; § 11.3.  The Warrants Agreement limited third-party beneficiaries to holders of the warrants.  ECF No. 18-6 at 15; § 9.4.  Because Mr. Lu does not claim to be such a holder, he cannot invoke that agreement.

*Fifth*, Mr. Lu argues that Cheer Holding is subject to jurisdiction due to its retention of Benchmark as a financial advisor.  But telephone contacts by an out-of-state defendant with New York do not constitute transacting business when the "center of the gravity" of the transaction being discussed is elsewhere.[5]  In addition, retaining a third-party professional "who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough" for purposes of § 302(a)(1).  *Orlando v. Nxt-ID, Inc.*, No. 1:20-cv-1604 (MKV), 2021 U.S. Dist. LEXIS 55677, at *15 (S.D.N.Y. Mar. 23, 2021); *see also Poms v. Dominion Diamond Corp.*, No. 655733/2017, 2019 WL 2106090, 2019 N.Y. Slip Op. 31364(U) (N.Y. Sup Ct, New York County May 15, 2019) (retaining New York lawyers at Paul Weiss LLP

---

[5] *Aquiline,* 861 F. Supp. 2d at 388(telephone calls and emails generally were not sufficient to confer personal jurisdiction); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("where a defendant's 'contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state,' there is no personal jurisdiction under C.P.L.R. § 302(a)(1).") (internal citation and quotation marks omitted).

did not create jurisdiction because the merger's center of gravity was in Canada and "the cause of action is about the sufficiency and accuracy of disclosures made in connection with the Proposed Transaction, not about Paul Weiss being retained.").[6]  This rule is critical to ensuring New York's status as the premier global financial center.  Clients elsewhere are inclined to hire New York professional advisors because New York "connote[s] the big leagues, the wealth of contacts, the depths of resources." *Painewebber, Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 121 (S.D.N.Y. 1990).[7]  Mr. Lu's proposed reading of § 302(a)(1) would seriously discourage non-New York clients from hiring advisors based here and would upend many long-standing client relationships.

Benchmark was hired to provide financial advice to the Special Committee.  It is not a party to this litigation and was not a party to the Merger Agreement.  Its retention is not being litigated.  To quote the *Poms* court, *supra*, this litigation "is not about [Benchmark] being retained."  Benchmark's New York location was a mere fortuity.  In the words of the *Orlando* court, *supra*, it "could have performed the same services from an office somewhere else."  This is not enough sustain New York personal jurisdiction under C.P.L.R. § 302(a)(1).

Benchmark communicated with the China-based Special Committee and the Committee's China-based counsel.  *See, e.g.*, ECF 14-10 at 39 (the "Special Committee held a telephonic meeting with Hogan Lovells and Benchmark").  Benchmark did not meet in person in New York with the Special Committee or any other person regarding the Proposed Merger.  Nor did Benchmark have direct contacts with the Buyer Group or its counsel or its financial advisor.

---

[6] *See also Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 224 (W.D.N.Y. 1997) ("use of New York companies in issuing bonds to raise capital, the use of investment advisors or other New York professional organizations" did not create personal jurisdiction).

[7] *see also id.* at 120 (hiring a "big 'New York' Investment house is not a purposeful availment of New York as a forum just as 'Get me a New York lawyer' without more, is not an invocation of in personam jurisdiction in the forum state of the lawyer's practice.").

Benchmark did **not negotiate the Merger Agreement**.  The parties' **Hong Kong** based counsel conducted the negotiations.  *See e.g., id.* at 41 ("During the course of the next few days, Hogan Lovells and Latham, through an exchange of multiple drafts and telephonic meetings, continued to negotiate").  Mr. Lu's gross inflation of Benchmark's role is a desperate gambit to avoid dismissal.[8]  His cases feature **defendants** meeting **in person** in New York with a **counterparty**.[9]

### B.    Finding personal jurisdiction in these circumstances would violate due process

Mr. Lu fails to meaningfully engage with the two prongs of the due process analysis.  *See* Mot. 15-17.  Regarding minimum contacts, Mr. Lu refers to Cheer Holding's "repeatedly tapping into New York's capital markets to conduct public offers."  Opp. at 17.  But, again, listing shares in New York has no jurisdictional significance.  Nor did Cheer Holding's participation in the Business Combination with Symphony reasonably create an anticipation that it would be sued in New York by Mr. Lu, who had no role in the Business Combination.  Mr. Lu does not address the reasonableness prong of due process at all.  *See* Mot. at 16-17.

## II.    THIS CASE SHOULD BE DISMISSED IN THE ALTERNATIVE ON *FORUM NON CONVENIENCE* GROUNDS

### A.    Mr. Lu's choice of this forum is entitled to minimum deference

Mr. Lu gives this Court no valid reason to defer to his forum choice.  *First*, he is a *California* resident suing in *New York* a *foreign* party invoking *Cayman* law.  His two cases are

---

[8] Mr. Lu's hyperbolic and unsupported assertions that the Merger Agreement was negotiated and finalized at Benchmark's New York office or that no one else "devoted more manpower and time" to the Proposed Merger than Benchmark are concocted out of thin air.  *See* Opp. 12-14.

[9] *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, No. 19-CV-6483 (RA), 2021 U.S. Dist. LEXIS 62772, at *13 (S.D.N.Y. Mar. 31, 2021), the parties finalized the deal documents "over a weekslong period" at the New York office of a law firm.  And in *New Asia Enters. v. Fabrique, Ltd.*, 2014 U.S. Dist. LEXIS 112438, at *6-8 (S.D.N.Y. Aug. 13, 2014), the parties' principals negotiated in person in New York.  Here, Benchmark did not meet the Buyer Group and did not negotiate with them.

inapposite because they involved substantial connections to the U.S., including operations here and claims based on U.S. law.[10]  Only limited deference is owed when "[n]o matter how [non-New York Plaintiffs] try to characterize it, this is not a case about what happened at Credit Suisse in New York . . . Those actions and inactions are alleged to have violated Swiss law, not U.S. law."  *Colbert v. Dougan*, No. 23-cv-7297, 2024 U.S. Dist. LEXIS 49487, at *37-38 (S.D.N.Y. Mar. 20, 2024).  This is what happens here:  No matter how Mr. Lu tries to characterize it, the decisions related to the Proposed Merger and its termination were made in China and Cheer Holding is alleged to have violated Cayman corporate law, not U.S. corporate law.  *Second*, Mr. Lu again asserts that Cheer Holding has agreed to jurisdiction in New York through forum selection clauses.  This is wrong and misleading, as already discussed *supra*.[11]

### B.    The Cayman Islands is an adequate alternative forum

A foreign forum is an adequate forum if the defendant is subject to service there and its substantive law permits the litigation to proceed.  Mot. at 18-19.  Mr. Lu does not contest either prong.  His assertions that court costs are higher, and that evidence is less readily available in the Cayman Islands, Opp. at 18 to 20, even if true, have no bearing on the forum's adequacy.[12]

### C.    Public factors weigh in favor of dismissing case

Contending that public interest favors New York, Mr. Lu again cites only to *DiRienzo*.  *See* Opp. at 20.  But this citation is misplaced because, again, Mr. Lu asserts no U.S. law claims and

---

[10] *See DiRienzo v. Philip Services Corp.,* 294 F. 3d 21, 26-26, 29-29 (2d Cir. 2002) (claims under federal securities laws and defendant did "the bulk of its business" in the U.S.); *In re Poseidon Concepts Sec. Litig.*, 2016 U.S. Dist. LEXIS 68127, at *10-11 (S.D.N.Y. May 24, 2016) (U.S. securities claims based on alleged fraudulent recognition of revenue from U.S. operations).

[11] *Fasano v. Yu*, 921 F.3d 333 (2d Cir. 2019) is inapposite because plaintiff there was a party to an ADR agreement containing a forum selection clause.

[12] *See, e.g.*, *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447 (E.D.N.Y. 1986) (higher expenses of litigating in Canada did not defeat its adequacy as alternative forum).

the alleged harms flow *only* from the board of a Cayman company (sitting in China) approving and then terminating the Proposed Merger. *DiRienzo* itself fatally undercuts Mr. Lu's reliance on it because it recognized that a U.S. court should not retain a case that implicated a foreign corporation's internal affairs. *See* 294 F. 3d at 32 (citing with approval to the Second Circuit's affirmance of dismissal in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1233-34 (2d Cir.1996) in which American shareholders of a Scottish corporation attempted to gain a board seat). As Judge Colleen McMahon bluntly put it, any assertion that New York would have a greater interest than a foreign forum in adjudicating a dispute of this nature "is **errant nonsense**." *See Colbert*, 2024 U.S. Dist. LEXIS 49487 at *72 (emphasis added). The foreign forum "possesses a strong interest in regulating the conduct of [corporations] within its borders" *Id*. at *73. "There is [also] a significant interest in having localized matters decided in the local forum in accordance with domestic law governing the case." *Id*. (internal citation quotation marks omitted). Even if a New York interest exists, it "pales in comparison with that of" the foreign jurisdiction. *Id*.

Judge Alison Nathan recognized this wide disparity in the interests of competing forums when she observed a plaintiff "is not bringing suit under any federal securities statutes, and so any false statements would only be relevant to this case insofar as they constitute a violation of Liu's fiduciary duties. The scope of those duties is defined by Cayman Islands law." *Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 U.S. Dist. LEXIS 125518, at *24 (S.D.N.Y. Sep. 18, 2015). In *Holzman*, an American shareholder of a Cayman company sued in this Court for breach of fiduciary duty. Judge Nathan concluded that there was probably no personal jurisdiction, but elected to dismiss on *forum non conveniens* grounds. Mr. Lu's only response to *Holzman* is he could establish personal jurisdiction over Cheer Holding. Opp. at 22-23. That assertion is incorrect but is also irrelevant. If a *forum non conveniens* analysis is necessary, then that portion

of the *Holzman* opinion is directly on point.  Mr. Lu does not say why *Holzman* is distinguishable from a *forum non conveniens* perspective.  Simply put, it is not.  New York has "virtually no interest" in retaining a case such as *Holzman* or *this* case.  2015 U.S. Dist. LEXIS 125518, at *24.

Tellingly, Mr. Lu ***ignores*** the other key component of the public interest analysis.  The need for this Court to avoid the application of unfamiliar foreign law is a compelling independent reason to grant dismissal.  *See* Mot. at 20.  Mr. Lu does not even ***try*** to explain, most likely because he has no cogent explanation to provide, why this Court should expend its finite resources to examine the intricacies of Cayman corporate law, given New York's tangential interests to this dispute.  Documents docketed so far already show that this case will likely entail labor-intensive resolution of many novel and complex foreign legal issues.  For example, Mr. Lu has at least twice asserted that he is entitled to a jury trial, while Cheer Holding contends that there should be a bench trial. Complaint, ¶ 63. ECF No. 23 at ¶ 6.  A civil trial is available in the Caymans Island only in an "exceptional case."  Second Wang Dec, Ex. 2 at 18, § 7.3.  Mr. Lu should not be permitted to impose on this Court the burdens of resolving such difficult foreign law issues.  As another example, Chinese discovery blocking statutes could be time consuming to assess and the Cayman Grand Court has been wrestling with them.[13]  The Cayman standard, ultimately guided by the Privy Council in London, for resolving the conflict of law issues inherent in these blocking statutes may be different from the American standard.  The Cayman Islands has a compelling interest in deciding how to strike a proper balance that is respectful of competing sovereign prerogatives. This Court has no reason to wade into an issue that could engender diplomatic friction with China.

### D.  Private interest factors weigh in favor of dismissing case

Mr. Lu's private interests argument is based on the flawed contention that most of the

---

[13] ECF No. 23 at ¶ 7; ECF No. 25; Second Wang Dec. Ex. 4, ¶¶ 16-37.

evidence related to this litigation is in New York.  Most documents and witnesses (including members of the Special Committee and Cheer Holding's leadership) are actually in China, a fact that favors neither New York nor the Cayman Islands.  At least one original member of the Special Committee has left Cheer Holding, Wang Dec., Ex. 3, making it doubtful whether he would be subject to this Court's compulsory authority.  On the other hand, a Cayman company's former director would most likely still be subject to Cayman jurisdiction.  Mr. Lu also dramatically inflates the volume of relevant evidence that could be in New York.  Opp. at 21-22.  Given that Mr. Lu only brings claims related to the Proposed Merger and not the earlier transactions, Benchmark is the only New York-based non-party that may have relevant evidence.  And the universe of Benchmark evidence that is not already in Cheer Holding's possession is likely quite small.

Mr. Lu complains that relief pursuant to 28 U.S.C. §1782 would be needed if this case is dismissed, as if that would help him defeat a *forum non conveniens* motion.  Opp. at 22.  But the ready availability of this Section 1782 discovery tool **affirmatively favors** dismissal.  *Colbert*, LEXIS 49487 at *53-54 (noting U.S. evidence can be obtained via Section 1782); *Warter v. Bos. Sec., S.A.*, 380 F. Supp. 2d 1299, 1312 (S.D. Fla. 2004) ("ability to obtain evidence in U.S. pursuant to 28 U.S.C. § 1782 supports dismissal").  Because courts routinely grant Section 1782 discovery to aid Cayman cases,[14] dismissal of this litigation in favor of the Cayman forum is just and proper.[15]

## CONCLUSION

For the reasons discussed in the Motion and herein, this case should be dismissed.

---

[14] As a serial litigant in the U.S and the Caymans Islands, Mr. Lu is familiar with this Section 1782 process, having been a party to at least three 1782 cases to aid his extensive Cayman litigation.  *See* Mot. at 5, n.2.

[15] Mr. Lu bizarrely says that it is "*much* shorter and cheaper" to fly from Beijing to New York than to the Cayman Islands.  Opp. at 22 (emphasis added).  The flight time from Beijing to New York is 14 hours. It takes four hours to fly from New York to the Cayman Islands, a popular vacation destination for people in North America; those flights are frequent and affordable.

DATED: April 18, 2024                          **LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ *Minyao Wang*
Minyao Wang
NY State Bar No. 4744314
Alyssa J.  Rodriguez
NY State Bar No. 6109821
77 Water Street, Suite 2100
New York, New York 10005
212.232.1300
Minyao.Wang@lewisbrisbois.com
Alyssa.Rodriguez@lewisbrisbois.com

*Attorneys for CHEER HOLDING, INC. (f/k/a Glory*
*Star New Media Group Holdings Limited*


TO:    Parties via ECF

11