UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN X LU,

                    Plaintiff,

            v.

CHEER HOLDING INC., f/k/a Glory Star New
Media Group Holdings Limited,

                    Defendant.

---

No. 24-cv-459 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Kevin Lu, proceeding *pro se*, alleges that Defendant Cheer Holding, of which he is a shareholder, aided and abetted several board members in the breach of their fiduciary duties and that it was negligent in its negotiation of a merger agreement. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and on grounds of *forum non conveniens*. For the reasons that follow, Defendant's motion is granted on the basis of *forum non conveniens*.

## BACKGROUND[1]

Defendant, a mobile and online digital media entertainment company, is incorporated in the Cayman Islands and has its operating base in China. *See* Compl., Dkt. 1-2, ¶¶ 11, 27. Although its stock is listed on Nasdaq, *id.* ¶ 11, it does not maintain any offices in the United States, nor is it registered to do business in the United States, Decl. of Jia Lu, Dkt. 13, ¶ 4. Defendant also does

---

[1] The Court's account of the factual allegations is drawn from the complaint, declarations, and exhibits submitted by the parties. *See Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) (considering declarations and exhibits on a motion to dismiss for lack of personal jurisdiction); *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010) ("In considering [d]efendants' motion to dismiss on . . . *forum non conveniens* grounds, this Court may consider affidavits, affirmations and exhibits submitted in connection with the motion.").

not have any employees or bank accounts in the United States. *Id.*; *see also* Decl. of Zhihong Tan, Dkt. 30, ¶ 4. All of its business records are located in China or its registered office in the Cayman Islands, Decl. of Jia Lu ¶ 7, and the members of its Board of Directors are all Chinese citizens who live in China, *id.* ¶ 8. Plaintiff is a shareholder of Defendant and resides in California. Compl. ¶ 10.

In August 2018, Defendant's predecessor, TKK Symphony, completed an initial public offering, listing its stock on Nasdaq. *Id.* ¶ 24. Defendant engaged Continental Stock Transfer & Trust, whose offices are located in New York, as its stock transfer agent. *Id.* ¶ 21. In February 2020, TKK Symphony merged with Glory Star New Media Group, adopting the latter's name and changing its stock symbol to GSMG. *Id.* ¶ 25. In November 2023, Defendant changed its name from Glory Star New Media Group to its current name—Cheer Holding, Inc. Decl. of Zhihong Tan ¶ 3.

On March 13, 2022, Defendant's Chairman and CEO, Bing Zhang, submitted a proposal to the Board to take Defendant private. Compl. ¶ 29. A special committee of two independent directors, Ke Chen and Ming Shu Leung, was formed on March 22, 2022 to evaluate and negotiate Zhang's proposal. *Id.* ¶ 30. The committee was given "full authority" to hire legal and financial advisors, conduct negotiations on behalf of Defendant, and decide whether to approve or reject the proposal. Decl. of Jia Lu ¶ 5.[2] The committee's financial advisor was Benchmark Company LLC, a company located in New York, and its legal counsel was Hogan Lovells. Compl. ¶ 30; *see also* Decl. of Kevin Lu, Dkt. 18, Ex. 7. Plaintiff alleges that Zhang "hand-picked" Chen and Leung to serve on the committee. Compl. ¶ 31.

With regard to Zhang's proposal, the meetings of the Board of Directors and the special committee took place in "mainland China, or Hong Kong, or via teleconference." Decl. of Jia Lu

---

[2] Unless otherwise noted, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

¶ 6. None took place in the United States, nor did any member of the Board or special committee visit the United States in connection with Zhang's proposal. *Id.*

On July 11, 2022, Defendant entered into a buyout agreement (the "Merger Agreement") with a group led by Zhang (the "Buyer Group"). Compl. ¶ 32. Pursuant to the Agreement, (i) the public shareholders were to receive $1.55 per share, (ii) after shareholder approval, Defendant would retain the exclusive right to terminate the going-private transaction, and (iii) in the event of the Buyer Group's non-performance, Defendant's only remedy was to terminate the transaction and demand a fee of $1.05 million from the Buyer Group. *Id.* Plaintiff alleges that the termination provision was advantageous to the Buyer Group and insufficient to cover Defendant's costs associated with the transaction. *Id.* ¶ 33.

Defendant's shareholders authorized the agreement on October 27, 2022, *id.* ¶ 34, and around the same time, Plaintiff delivered a notice to Defendant exercising his appraisal rights and seeking discovery under Cayman Islands law, *id.* ¶ 35. On March 23, 2023, Defendant provided an update on the going-private transaction in its annual report, highlighting several risks associated with completing the transaction, including diverting management focus and other resources, increasing the volatility of its trading price, and being subject to potential lawsuits in connection with the transaction. *Id.* ¶ 36.

On April 11, 2023, Defendant terminated the transaction. *Id.* ¶ 39. Plaintiff alleges that the termination was "at the behest" of Zhang and was done in order to avoid shareholder litigation. *Id.* ¶¶ 39–40. He also alleges that although Defendant was entitled to the $1.05 million termination fee, the termination of the transaction "resulted in $100 million shareholder value destruction." *Id.* ¶ 39. Following the termination of the transaction, Plaintiff alleges that Defendant implemented a "shareholder dilution campaign" by issuing additional shares in private placement transactions,

implementing the reverse split of shares, and authorizing the creation of additional shares eligible for issuance. *Id.* ¶ 42.

On December 18, 2023, Plaintiff brought this action in New York state court, alleging that Defendant aided and abetted several directors in breaching their fiduciary duties under Cayman Islands law, and that it acted negligently in its negotiation of the Merger Agreement. *Id.* ¶¶ 43–57. According to the complaint, "[t]his action is not a derivative action," but a direct action against Defendant. *Id.* ¶ 8. Defendant removed this action to this Court on January 22, 2024, *see* Notice of Removal, Dkt. 1, and it now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and on grounds of *forum non conveniens*, *see* Def. Mot., Dkt. 12. With regard to the latter, it argues that this matter should be resolved in the Cayman Islands.

**LEGAL STANDARD**

Defendant first moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Where the parties have not engaged in discovery, as here, a plaintiff need only make a *prima facie* showing that jurisdiction exists. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013). Such a showing "may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

The Court must "construe the pleadings and affidavits in the light most favorable to [the] plaintiff[], resolving all doubts in [his] favor," *Porina v. Marward Shipping Co.*, 521 F.3d 122,

126 (2d Cir. 2008), and it must accept "the allegations in the complaint . . . as true to the extent they are uncontroverted by the defendant's affidavits, which the district court may also consider," *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). The Court does not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "Moreover, because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." *Holzman v. Guoqiang Xin*, No. 12-CV-8405, 2015 WL 5544357, at *4 (S.D.N.Y. Sept. 18, 2015).

Defendant also moves to dismiss the complaint pursuant to the *forum non conveniens* doctrine. District courts have "broad discretion" to dismiss cases on grounds of *forum non conveniens*. *Scot. Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996). To determine whether it is appropriate to do so, courts undergo a three-step process. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. . . . At step two, it considers whether the alternative forum proposed by the defendant[] is adequate to adjudicate the parties' dispute. . . . Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Id.* The defendant "bears the burden of establishing that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 110 (2d Cir. 2023). Courts, moreover, "are permitted to consider and credit any evidence in the record, including affidavits." *Lust v. Nederlandse*

*Programma Stichting*, 501 F. App'x 13, 14 n.1 (2d Cir. 2012); *Aguas Lenders Recovery Grp. v.*

*Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009).

## DISCUSSION

If "a court can readily determine that it lacks jurisdiction over . . . the defendant, the proper

course would be to dismiss on that ground." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,

549 U.S. 422, 436 (2007). Where "personal jurisdiction is difficult to determine," however, and

"*forum non conveniens* considerations weigh heavily in favor of dismissal," a court may "properly

take[] the less burdensome course" and dismiss on grounds of *forum non conveniens*. *Id.*; *see also*

*Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 n.6 (2d Cir. 2013) ("As *forum*

*non conveniens* is a non-merits ground for dismissal, a court may dispose of an action by a *forum*

*non conveniens* dismissal, bypassing questions of . . . personal jurisdiction, when considerations

of convenience, fairness, and judicial economy so warrant."). Here, even though "there is good

reason to question whether this Court may exercise personal jurisdiction over [Defendant], the

most straightforward approach is to dismiss the case on the basis of *forum non conveniens*."

*Holzman*, 2015 WL 5544357, at *4. The Court thus declines to resolve the question of whether it

has personal jurisdiction over Defendant and instead dismisses this action on *forum non conveniens*

grounds.

I.    ***Forum Non Conveniens***

A.  **Deference to Plaintiff's Choice of Forum**

In determining whether to dismiss an action on grounds of *forum non conveniens*, courts

must first consider "the deference to be accorded the plaintiff's choice of forum." *Fasano v. Yu*

*Yu*, 921 F.3d 333, 335 (2d Cir. 2019). "[W]hen a plaintiff sues in his home forum, that choice is

generally entitled to great deference." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64,

71 (2d Cir. 2003). But "when a foreign plaintiff sues in a United States forum[,] such choice is entitled to less deference." *Id.* Ultimately, "the degree of deference assigned to [the] plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a sliding scale." *Id.*

"[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Relevant factors which counsel against *forum non conveniens* dismissal thus "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Id.* On the other hand, less deference is owed to a plaintiff's choice if it is "motivated by forum-shopping reasons," "such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.*

That said, "[w]here the parties have contractually selected a forum, . . . the forum selection clause substantially modifies the *forum non conveniens* doctrine and the usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Fasano*, 921 F.3d at 335. Courts must consider "three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or

permissive; and (3) the claims and parties to the dispute are subject to the clause." *Id.* If a court finds that the presumption applies, it "may be rebutted only if the objecting party clearly shows that the clause's enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Fasano v. Li*, 47 F.4th 91, 101 (2d Cir. 2022).

Here, in arguing that the Court should defer to his choice of forum, Plaintiff conclusorily points to two separate agreements—a Share Exchange Agreement and a Warrant Agreement—each of which contains a forum selection clause that provides that claims arising out of or relating to the agreement shall be heard in New York. *See* Decl. of Kevin Lu, Ex. 4 at 74; *id.* Ex. 6 at 15. In so doing, Plaintiff does not assert that his claims are subject to the forum selection clauses contained in those agreements, but rather that his choice of forum is "consistent" with those clauses. *See* Pl. Opp., Dkt. 17 at 18. For the presumption of enforceability to apply, however, "the claims and parties involved in the suit" must be "subject to the forum selection clause." *Fasano*, 921 F.3d at 337; *see also CMC Indus., Inc. v. CRIC TRT Acquisition, LLC*, No. 18-CV-209, 2018 WL 4386088, at *2 (S.D.N.Y. Sept. 14, 2018) ("Where . . . the rights being asserted do not originate from the contract containing the forum selection clause, the clause does not apply."). That a plaintiff's choice of forum is merely consistent with a forum selection clause of a different, unrelated agreement does not mean the plaintiff's choice is entitled to greater deference. *See Acosta v. JPMorgan Chase & Co.*, No. 05-CV-977, 2006 WL 229196, at *5 (S.D.N.Y. Jan. 30, 2006), *aff'd*, 219 F. App'x 83 (2d Cir. 2007) (rejecting the plaintiffs' attempt to "cite [a forum selection] clause as evidence that . . . defendants believe New York is an appropriate forum in which to litigate their own disputes" where the relevant agreement did "not govern the dispute in [that] case"); *Guerrini v. Atmel Corp.*, 667 F. App'x 308, 309–10 (2d Cir. 2016) (agreeing with

the district court's conclusion that "[b]ecause the plaintiffs [did] not bring contract claims, . . . the forum selection clauses were irrelevant").

Indeed, Plaintiff provides no explanation as to how the Share Exchange Agreement or Warrant Agreement are at all relevant to the instant dispute. The Share Exchange Agreement was entered into in September 2019, and concerns the transaction in which TKK Symphony purchased Glory Star New Media Group. *See* Decl. of Kevin Lu, Ex. 4 at 6. The Warrant Agreement, meanwhile, was entered into in 2018 between TKK Symphony and Continental Stock Transfer & Trust Company in connection with TKK Symphony's public offering. *See id.* Ex. 6 at 1. Plaintiff was not a party to either agreement, *id.* Ex. 4 at 6; *id.* Ex. 6 at 1, and his claims do "not allege breach of the [agreements]" nor "call for [their] interpretation," *CMC Indus., Inc.*, 2018 WL 4386088, at *2. His claims, which are specific to the going-private transaction, thus do not arise out of or relate to either agreement, and the forum selection clauses contained therein do not apply.[3]

In his complaint, he originally alleged that jurisdiction was proper due to a forum selection clause in the Merger Agreement between Defendant and the Buyer Group regarding the going-private transaction.[4] *See* Compl. ¶¶ 14, 17; *see also* Decl. of Minyao Wang, Ex. J at 115. The Merger Agreement provides that

> [it] shall be interpreted, construed and governed by and in accordance with the Laws of the State of New York without regard to the conflicts of Law principles

---

[3] Both agreements, moreover, expressly provide that no rights are conferred to nonparties. Decl. of Kevin Lu, Ex. 4 at 73; *id.* Ex. 6 at 15. And, as discussed below, courts have held that where a party is "not [a] signator[y] to" an agreement which "expressly disclaim[s] third-party beneficiaries," he "cannot enforce [a] forum selection clause[]" contained in that agreement. *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, No. 19-CV-6483, 2021 WL 1227415, at *7 n.6 (S.D.N.Y. Mar. 31, 2021); *see also APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 671 (S.D.N.Y. 1999). The agreements here provide exceptions for: (i) specified "Indemnified Persons," with regard to the Share Exchange Agreement, Decl. of Kevin Lu, Ex. 4 at 73, and (ii) "Registered Holders of the Warrants," with regard to the Warrant Agreement, *id.* Ex. 6 at 15. But Plaintiff does not allege that he falls within either exception.

[4] In his opposition papers, Plaintiff also argues that the Merger Agreement incorporates terms of the Warrant Agreement. The Merger Agreement provides that "[e]ach Public Warrant that is issued and outstanding immediately prior to the Effective Time shall become a warrant of the Surviving Entity pursuant to the terms of the Warrant Agreement." Decl. of Minyao Wang, Dkt. 14, Ex. J at 133. Plaintiff, however, does not allege that he holds any warrants. Nor does he otherwise explain how the Warrant Agreement is relevant to his claims here.

thereof that would subject such matter to the Laws of another jurisdiction, except that the following matters arising out of or relating to this Agreement shall be interpreted, construed and governed by and in accordance with the Laws of the Cayman Islands in respect of which the Parties hereby irrevocably submit to the nonexclusive jurisdiction of the courts of the Cayman Islands: the Merger, . . . the fiduciary or other duties of the Company Board and the directors of Merger Sub and the internal corporate affairs of the Company and Merger Sub.

*Id.* Ex. J at 178. Moreover, under the terms of the Merger Agreement,

[s]ubject to the exception for jurisdiction of the courts of the Cayman Islands . . . , any Legal Proceedings arising out of or in any way relating to this Agreement shall be submitted to the Hong Kong International Arbitration Centre ("HKIAC") and resolved in accordance with the Arbitration Rules of HKIAC in force at the relevant time and as may be amended by this Section . . . . The place of arbitration shall be Hong Kong.

*Id.* Ex. J at 179.

It is not entirely clear whether Plaintiff can—or even seeks to—enforce the Merger Agreement's forum selection clause against Defendant. As with the Share Exchange Agreement and Warrant Agreement, Plaintiff is not a party to the Merger Agreement. *See id.* Ex. J at 118. But "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp.*, 585 F.3d at 701.

"[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc.*, 714 F.3d at 723. To be so related, "the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is foreseeable to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.* "Courts have generally found such [a] 'close relationship' in two kinds of situations: (1) where the non-signatory had an active role in the transaction between the signatories, or (2) where the non-signatory had an active role in the company that was the signatory." *Vuzix Corp. v. Pearson*, No. 19-CV-689, 2019 WL 5865342, at

10

*5 (S.D.N.Y. Nov. 6, 2019). Additionally, "[n]on-signatory alter-egos, corporate executive officers, and successors-in-interest have all, at least in some instances, satisfied the 'closely related' test." *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018).

Plaintiff makes no argument as to whether he is closely related to a signatory. Nor does he appear to fit within any of the situations where courts have previously found a close relationship to exist. *Cf. Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 460–61 (S.D.N.Y. 2021) ("As a consequence of Plaintiffs' sparse representations regarding [the non-signatory], the Court cannot find on the record before it that [the non-signatory] and [the signatory] are 'closely related.'"). The Merger Agreement, moreover, provides that it does not confer any rights or remedies to nonparties. Decl. of Minyao Wang, Ex. J at 178. And courts have held that nonparties cannot rely on a forum selection clause where the relevant agreement states that it does not confer rights to nonparties. *See, e.g.*, *Casville Invs., Ltd. v. Kates*, No. 12-CV-6968, 2013 WL 3465816, at *6 (S.D.N.Y. July 8, 2013) ("As the Agreement clearly states that no rights or remedies are conferred to nonparties, Plaintiffs cannot rely on the forum selection clause in the Agreement as a basis for finding that jurisdiction or venue is proper in this Court."); *APA Excelsior III L.P.*, 49 F. Supp. 2d at 671 (noting that "it is unclear whether [p]laintiffs are able to invoke the forum selection clause against defendants" where "[n]one of the plaintiffs was a party to the Merger Agreement" and the agreement "contain[ed] language specifying that non-parties may not take advantage of its terms"); *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, 2021 WL 1227415, at *7 n.6.

In any event, even if the Court were to assume both that Plaintiff could enforce the forum selection clause in the Merger Agreement against Defendant and that the clause covered his claims,

the clause would not counsel toward a New York forum. The Merger Agreement provides that "the following matters arising out of or relating to this Agreement shall be interpreted, construed and governed by and in accordance with the Laws of the Cayman Islands in respect of which the Parties hereby irrevocably submit to the nonexclusive jurisdiction of the courts of the Cayman Islands: the Merger, . . . the fiduciary or other duties of the Company Board and the directors of Merger Sub and the internal corporate affairs of the Company and Merger Sub." Decl. of Minyao Wang, Ex. J at 178. And except "for jurisdiction of the courts of the Cayman Islands . . . , any Legal Proceedings arising out of or in any way relating to this Agreement shall be submitted to the Hong Kong International Arbitration Centre." *Id.* Ex. J at 179. Accordingly, none of the forum selection clauses that Plaintiff points to support his argument that his choice of forum is owed greater deference.[5]

   That the forum selection clauses Plaintiff relies on do not govern here does not, however, mean that his choice of forum is not entitled to any deference. A plaintiff's choice to bring suit in his home forum is "generally entitled to great deference," and the degree of that deference moves "along a sliding scale." *Pollux Holding Ltd.*, 329 F.3d at 71. "In cases with foreign defendants, the home forum for the plaintiff is any federal district in the United States, not the particular district in which the plaintiff lives." *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 256 (S.D.N.Y. 2007); *see also Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000). The instant suit is thus properly viewed as being brought in Plaintiff's home forum, even though he resides in California, and not New York. *See Bohn v. Bartels*, 620 F. Supp. 2d 418, 429 (S.D.N.Y. 2007); *see also Iragorri*, 274 F.3d at 73 ("[I]t will be far more convenient for a U.S.

---

[5] Defendant has not sought to bind Plaintiff to any forum selection clause.

resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides.").

That said, "where the circumstances indicate that the parties and material events bear no bona fide connection to the United States, or that in relation to the core operative facts in dispute the parties and events at best have only marginal links to the plaintiff's chosen venue, that choice of forum is not entitled to special deference." *Stevenson v. Thornburgh*, No. 23-CV-4458, 2024 WL 645187, at *25 (S.D.N.Y. Feb. 14, 2024). Here, Plaintiff may have a bona fide connection to the United States, but the lawsuit does not. Defendant is incorporated in the Cayman Islands and operates in China. *See* Compl. ¶¶ 11, 27. Plaintiff does not assert any violation of United States securities laws, *see id.* ¶¶ 43–57, and he does not dispute that his claims are based in Cayman Islands law, *see* Def. Mot. at 7 n.5; *see also* Pl. Opp. Moreover, the meetings of the Board of Directors and the special committee regarding the proposed going-private transaction took place in "mainland China, or Hong Kong, or via teleconference." Decl. of Jia Lu ¶ 6. The links to New York—Defendant's hiring of a New York stock transfer agent and financial advisor—are marginal at best. In other words, "[t]he connections to the United States alleged by [Plaintiff] . . . are insubstantial in light of the fact that the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil," and Plaintiff "thus fail[s] to allege a bona fide connection that justifies granting substantial deference to [his] choice of forum." *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007).

Plaintiff argues that because Defendant listed its shares on Nasdaq, deference to his choice is warranted. In so arguing, he relies on *DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002) and *In re Poseidon Concepts Securities Litigation*, No. 13-CV-1213, 2016 WL 3017395 (S.D.N.Y. May 24, 2016). In *DiRienzo*, the plaintiffs brought claims under United States securities

13

laws against foreign defendants, and the Second Circuit found that the plaintiffs' choice of forum should be accorded deference given "this country's interest in having United States courts enforce United States securities laws," and because the "defendants sought out business opportunities in this country by registering stock on American exchanges, filing statements with the SEC and conducting the bulk of its business in the United States." *DiRienzo*, 294 F.3d at 28. Similarly, in *In re Poseidon Concepts Securities Litigation*, the court found that the plaintiff's choice to bring suit in this district against foreign defendants was "entitled to significant deference," in part because the plaintiff's "claims [arose] under U.S. securities laws." *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *9. Here, by contrast, Plaintiff asserts no violation of United States securities laws. Nor does he allege that Defendant conducted the bulk of its business in the United States. The instant dispute is thus "readily distinguishable" from *DiRienzo* and *In re Poseidon Concepts Securities Litigation*. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 270 (S.D.N.Y. 2010) (finding *DiRienzo* distinguishable where "the legally significant acts implicated by [the plaintiffs'] claims involve[d] conduct and transactions governed by [foreign] law").

Given that "the operative facts upon which the litigation is brought bear little material connection to the chosen forum," Plaintiff's "choice of forum is . . . given reduced emphasis." *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007); *see also, e.g.*, *Kirch v. Liberty Media Corp.*, No. 04-CV-667, 2006 WL 3247363, at *4 (S.D.N.Y. Nov. 8, 2006) (concluding that "the plaintiffs' choice of this forum is not to be afforded great deference, in light of the inherently German nature of this dispute"); *BlackRock, Inc. v. Schroders PLC*, No. 07-CV-3183, 2007 WL 1573933, at *4–5 (S.D.N.Y. May 30, 2007). The Court thus finds that Plaintiff's choice of forum is owed only limited deference.

### B. Availability of an Adequate Alternative Forum

"After making an initial assessment of the deference due the plaintiff's choice of forum, a district court must next determine whether an adequate alternative forum exists." *Pollux Holding Ltd.*, 329 F.3d at 74. "An alternative forum is adequate if the defendant[] [is] amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Id.* at 75.

Plaintiff does not dispute that the Cayman Islands permit litigation of the subject matter of the instant dispute, *see* Pl. Opp. at 18–20, and Defendant agrees that it "is unquestionably subject to service of process there," *see* Def. Mot. at 18; *see also In re Herald*, 540 F. App'x 19, 27 (2d Cir. 2013). The Court thus finds that at least one adequate alternative forum exists.[6] *See Holzman*, 2015 WL 5544357, at *8 ("As there is no dispute that defendant is amenable to process in the Cayman Islands, the Court finds that an adequate alternative forum exists.").

### C. Private and Public Interest Considerations

Lastly, courts must balance the "private and public interest factors to ascertain whether the case should be adjudicated in [the] plaintiff's chosen forum or in the alternative forum proposed by [the] defendant." *Pollux Holding Ltd.*, 329 F.3d at 74–75. The private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attaining the attendance of unwilling witnesses; the convenience of willing witnesses; and all other practical problems that make trial easy, expeditious, and inexpensive. *Iragorri*, 274 F.3d at 73; *Olin Holdings Ltd.*, 73 F.4th at 109. Here, the private interest factors weigh against New York, but only

---

[6] Plaintiff argues that the Cayman Islands are not an adequate forum because there is evidence located in the United States. *See* Pl. Opp. at 19–20. "[T]he location of witnesses and evidence," however, is "not relevant to whether an adequate forum exists; instead, it is more appropriately taken into account when considering and balancing the private and public interest factors." *Rahl v. Bande*, 328 B.R. 387, 405 (S.D.N.Y. 2005); *see also Iragorri*, 274 F.3d at 73 (noting that one of the private interest factors is "the relative ease of access to sources of proof").

slightly in favor of the Cayman Islands, given that most of the relevant evidence and witnesses are likely located in China.

As previously discussed, Defendant is not registered to do business in New York, and it does not maintain any offices or bank accounts in the United States. Decl. of Jia Lu ¶ 4. Its operating base is in China, Compl. ¶ 11, and the members of its Board of Directors and special committee are all Chinese citizens who "live in mainland China," Decl. of Jia Lu ¶ 8. The meetings regarding the proposed going-private transaction also took place in China, Hong Kong, or via teleconference, and no member of Defendant's Board of Directors or the special committee visited the United States in connection with the transaction. *Id.* ¶ 6. Its business records, including those that pertain to the transaction, are thus located "in China or [Defendant's] registered office in the Cayman Islands." *Id.* ¶ 7.

Accordingly, although some evidence may already be available in the Cayman Islands, most of the relevant evidence is likely in China. And with respect to the evidence and witnesses located in China, "it will be logistically burdensome to transport [them] to the adjudicating forum" "regardless of whether this case is litigated here or in the Cayman Islands." *Holzman*, 2015 WL 5544357, at *8; *see also Shanahan v. Vallat*, No. 03-CV-3496, 2004 WL 2937805, at *11 (S.D.N.Y. Dec. 19, 2004) ("[W]herever the case is adjudicated, at least some of the parties and witnesses will incur expenses and be inconvenienced by travel."); *cf. Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 439 (S.D.N.Y. 2022) ("The cost of obtaining testimony from willing witnesses is, in the era of modern communications and transportation technology, a fairly minor factor."). Moreover, should any of the witnesses located in China be unwilling to testify in New York, it is doubtful that Plaintiff would "be able to compel their testimony" here, which "supports a finding that the private factors disfavor

adjudicating in this forum." *Holzman*, 2015 WL 5544357, at *9; *see also Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 252 (4th Cir. 2011) ("The court rightly observed that it lacks authority to compel the attendance of Chinese witnesses, greatly undermining a fact-finding effort in Maryland."); *Lu v. Air China Int'l Corp.*, No. CV-92-1254, 1992 WL 453646, at *3 (E.D.N.Y. Dec. 16, 1992).

Although Plaintiff argues that there are documents readily available in New York, he fails to explain how they are relevant here. Indeed, many of the documents that Plaintiff lists—for example, documents pertaining to past public offerings or those held by Defendant's stock transfer agent—do not appear to be pertinent to his claims. *See Holzman*, 2015 WL 5544357, at *8 (finding private interest factors neutral notwithstanding the presence of New York underwriters where the plaintiff's claims did "not attack the securities offering in New York but instead challenge[d] the subsequent alleged misappropriation of money from [the defendant's] Chinese bank account"). Defendant's New York-based financial advisor could conceivably have relevant documents, but Defendant concedes that it likely already has in its possession most of the evidence that its financial advisor might have. *See* Def. Reply, Dkt. 29 at 10. In any event, to the extent Plaintiff seeks the minimal discovery that may be located within the United States, "[he] may, of course, request that this Court—and any other district court with jurisdiction over individuals [he] believe[s] to have relevant testimony and/or documents—order such persons to provide such discovery in aid of a foreign proceeding." *Star Colbert v. Dougan*, No. 23-CV-7297, 2024 WL 1197863, at *17 (S.D.N.Y. Mar. 20, 2024); *see also* 28 U.S.C. § 1782.

Plaintiff also argues that it is more expensive to litigate in the Cayman Islands than in New York. He asserts, for example, that the filing fee in the Cayman Islands is $6,050, as opposed to $400 in New York. *See* Pl. Opp. at 18. But he "has submitted absolutely no evidence of his current

financial situation" or any "inability to pay the potential costs associated with pursuing this matter in a [Cayman Islands] court." *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 383–84 (S.D.N.Y. 2006) ("[The plaintiff's] bald assertion of inability to pay is insufficient to defeat the *forum non conveniens* motion."); *see also Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 729 (S.D.N.Y. 2011) (rejecting "[p]laintiffs' argument that filing fees and bonds imposed by Swiss courts favor litigation in New York" in part due to their "fail[ure] to demonstrate their inability to afford them"); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 162 (S.D.N.Y. 2004). Even if he were to face financial hardship by litigating in the Cayman Islands, "a plaintiff's financial hardships" is just one of several "factor[s] to be weighed in determining the balance of convenience." *Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996). And courts have routinely found private and public interests to support dismissal on *forum non conveniens* grounds notwithstanding a plaintiff's argument that court costs and fees are higher in the alternative forum.[7] *See, e.g.*, *Fagan*, 438 F. Supp. 2d at 384 & n.7; *Wilson v. Eckhaus*, 349 F. App'x 649, 652 (2d Cir. 2009) (affirming *forum non conveniens* dismissal notwithstanding that "plaintiffs might have to pay a filing fee of 2.5% in Israel"); *Stevenson*, 2024 WL 645187, at *36 ("The fact that Plaintiffs may have to front some fees does not defeat a *forum non conveniens* motion."); *Core Software Tech., Inc. v. ImageSat Int'l N.V.*, No. 08-CV-7017, 2010 WL 21173, at *3 (S.D.N.Y. Jan. 5, 2010) (holding that, where "plaintiffs elected to invest in a company based in Israel," "it is not unfair to require them to litigate [their] claims there," even though it may "be expensive and difficult for them to litigate in Israel"). Here, moreover, "litigating this case in New York would likely create

---

[7] The Court also notes that Plaintiff is familiar with Cayman Islands courts, having "participated in . . . nine appraisal actions in the Cayman Islands" which "involve[d] [m]anagement [t]ake-[p]rivate transaction of a U.S listed, Chinese-based company incorporated in the Cayman Islands." Decl. of Kevin Lu ¶ 5.

additional expert witness costs as written and oral testimony from experts remains the basic mode of proving foreign law." *Holzman*, 2015 WL 5544357, at *9.

With regard to the public interest factors, those factors include: the administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the case; the local interest in having localized controversies decided at home; and the benefit of avoiding difficult problems in conflict of laws and the application of foreign law. *Iragorri*, 274 F.3d at 74; *Olin Holdings Ltd.*, 73 F.4th at 109–10. The Court finds the administrative difficulties associated with court congestion to be neutral here. "The Southern District of New York may have one of the nation's busiest dockets, but its administration is very efficient." *Glob. Art Exhibitions, Inc.*, 607 F. Supp. 3d at 440. And "[t]he parties do not offer any evidence that indicates that [Cayman Islands] courts are any more congested than the busy courts in this District." *Stevenson*, 2024 WL 645187, at *42. The remaining factors, however, weigh heavily in favor of dismissal.

"The public interest in having localized controversies decided at home requires an evaluation of which forum possesses a stronger local interest in the controversy." *Id.* Here, the Cayman Islands have a far stronger local interest in this action than New York. Plaintiff does not dispute that his claims are based in Cayman Islands law, and "United States courts have virtually no interest in resolving disputes governed exclusively by foreign law." *Star Colbert*, 2024 WL 1197863, at *24; *see also BlackRock, Inc.*, 2007 WL 1573933, at *11 ("[A]lthough a definitive determination that German substantive law applies to this case would be premature, the mere need to untangle problems in conflict of laws is part of the Court's consideration in evaluating the public interest factors."); *Murray*, 81 F.3d at 293. Although Plaintiff points to Defendant's listing on Nasdaq, that alone does not mean New York has an interest in resolving this dispute, especially

given that Plaintiff does not assert claims under United States securities laws. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d at 275 (finding that "the predominant public policy interest here is that of Switzerland, whose corporations and corporate governance law are at issue," notwithstanding that the "claims [were] brought in United States courts by American shareholders of stocks purchased on the NYSE"); *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 310 (S.D.N.Y. 2012) ("[N]ow that the federal [securities law] claims are no longer present and exclusively foreign law will govern, I find that the public interest factors weigh heavily in favor of [the foreign forum]."). Nor is this dispute local, "in that it does not arise out of [] Defendant's contacts with New York." *Holzman*, 2015 WL 5544357, at *10. To the contrary, the dispute "principally involves a Cayman Islands corporation, headquartered in China, and a [] transaction allegedly perpetrated by [individuals] in China." *Id.*

The Cayman Islands, on the other hand, "have a significant interest in the application of Cayman Islands law to the actions of a Cayman Islands corporation." *Id.* Indeed, "there is a significant interest in having localized matters decided in the local forum in accordance with domestic law governing the case." *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 535 (S.D.N.Y. 2006), *aff'd sub nom.*, 223 F. App'x 37 (2d Cir. 2007). "While the task of applying foreign law when necessary is far from impossible," *Star Colbert*, 2024 WL 1197863, at *25, it would "necessitate[] the introduction of inevitably conflicting expert evidence on [] questions of [Cayman Islands] law," *Stevenson*, 2024 WL 645187, at *44. Accordingly, given that Plaintiff's "claims would require application of principles of [Cayman Islands] law," the Cayman Islands have more "significant legal contacts with" and a greater "jurisdictional interest in the adjudication of the controversy before the Court." *See Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 307 (S.D.N.Y. 2007).

The Court thus "finds no compelling reason why the law and judicial resources of this forum should be applied to resolve this dispute, nor any overriding American policy interest that would be promoted or enforced by doing so." *Id.* at 307–08. Indeed, "[t]here is little sense to allowing a U.S. citizen to haul a . . . foreign defendant[] into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation in a prompt, efficient and effective manner." *LaSala*, 510 F. Supp. 2d at 228. And even though "most of the evidence and witnesses are [likely] located in China, the Cayman Islands nonetheless possess a greater interest in resolving this dispute . . . than New York." *Holzman*, 2015 WL 5544357, at *10; *see also Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 490 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007) ("When most of the events took place in a foreign forum or forums and involve mostly foreign parties, the United States and its citizens have less interest in the resolution of the action than the foreign forum.").

In sum, Plaintiff's choice of forum is entitled to only limited deference, the Cayman Islands are an adequate alternative forum, and the balance of private and public interest factors heavily favors the Cayman Islands. The Court thus holds that dismissal on grounds of *forum non conveniens* is warranted.

## II.    Leave to Amend

Plaintiff seeks leave to amend his complaint. *See* Dkt. 41. Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "permissive standard," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"Leave to amend, however, need not be granted where doing so would be futile." *Wenzel v. Marriott Int'l, Inc.*, No. 13-CV-8335, 2014 WL 6603414, at *7 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015). And courts routinely find leave to amend to be futile where it "would have no real effect on the *forum non conveniens* analysis." *Fagan*, 438 F. Supp. 2d at 391; *see also, e.g.*, *Wenzel v. Marriott Int'l, Inc.*, 629 F. App'x 122, 125 (2d Cir. 2015); *Yáñez Osuna v. Citigroup Inc.*, 820 F. App'x 38, 43 (2d Cir. 2020); *In re Alcon S'holder Litig.*, 719 F. Supp. 2d at 283. Although the Court is skeptical that any amendment Plaintiff may make will affect its *forum non conveniens* analysis, given that he is proceeding *pro se*, the Court nonetheless grants him leave to file an amended complaint—provided he has a good faith basis to do so. *Cf. Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) ("District courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend."); *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is granted on grounds of *forum non conveniens*, albeit with leave to amend. If he chooses to do so, Plaintiff may file an amended complaint no later than October 10, 2024. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 12.

SO ORDERED.

Dated:     September 10, 2024
           New York, New York

                                             Ronnie Abrams
                                             United States District Judge