UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN X. LU, <br><br>                          Plaintiff, <br><br>            v. <br><br>CHEER HOLDING, INC. (f/k/a Glory Star New Media Group Holdings Limited), CHEERS INC., GSMG LTD., BING ZHANG, KE CHEN, <br><br>                          Defendants. | 24-CV-459 (RA) <br><br> OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Kevin X. Lu brings this action against Defendants Cheer Holding, Inc., Cheers, Inc., GSMG Ltd., Bing Zhang, and Ke Chen, alleging that they committed securities fraud in violation of Sections 10(b), 13(e), and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") rules promulgated thereunder. Specifically, Plaintiff alleges that Defendants made numerous materially misleading statements and omissions in connection with a failed take-private transaction. Before the Court are Cheer Holding, Inc., Cheers, Inc., and GSMG Ltd.'s motions to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.[1] For the reasons that follow, the motion is granted.

## BACKGROUND[2]

The Court assumes the reader's familiarity with the facts of this case, which are discussed

---

[1] GSMG Ltd. also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).
[2] The following facts are drawn from the allegations set forth in the First Amended Complaint, *see* ECF No. 61, which are taken as true for the purposes of this motion to dismiss, as well as from "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied" in bringing this action, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

in the Court's prior ruling, *see Lu v. Cheer Holding Inc.*, No. 24-CV-459, 2024 WL 4149869, at *1–2 (S.D.N.Y. Sept. 10, 2024), and are set forth below only as they pertain to the instant motions.

Defendant Cheer Holding, Inc. ("Cheer" or the "Company") is a Cayman Islands incorporated company that, at all times relevant to this motion, was publicly traded on the NASDAQ. First Amended Complaint ("FAC") ¶ 15. On March 13, 2022, Defendant Bing Zhang, Cheer's Chairman and CEO, submitted a non-binding bid to take Cheer private. *Id.* ¶ 24. On March 22, 2022, Cheer's board of directors formed a special committee consisting of Ming Shu Leung and Defendant Ke Chang to evaluate the proposed take-private transaction on behalf of the Company and its public shareholders (the "Special Committee"). *Id.* ¶ 25. On July 22, 2022, Cheer entered into a "definitive merger agreement" (the "Merger Agreement") with Defendants Cheers Inc. and GSMG Ltd., entities created solely for the purpose of effectuating the merger transaction (together, the "Buyer Defendants"). *Id.* ¶¶ 16, 17, 26. The Merger Agreement provided that the Buyer Defendants would acquire Cheer at a price of $1.55 per share. *Id.* ¶ 26. On the same date, Cheer's board of directors adopted a resolution authorizing the merger. *Id.*

On August 8, 2022, the Company filed a preliminary proxy statement (the "Proxy Statement"), which appended the Merger Agreement. *Id.* ¶ 28; *see* Wang Decl., Ex. 1 at Annex A, ECF No. 66 (the "Merger Agreement" or the "Agreement"). The Proxy Statement cautioned investors that the merger might not succeed, stating, among other things: "while the Special Committee expects to complete the Merger, there can be no assurance that all conditions to the parties' obligations to complete the Merger will be satisfied and, as a result, it is possible that the Merger may not be completed even if Company shareholders approve it." Wang Decl., Ex. 1 at 34.

The Company's shareholders approved the merger on October 27, 2022, FAC ¶ 36, but its

consummation remained subject to several conditions. As relevant here, Section 7.2(a) of the Agreement required each party to ensure compliance with all applicable law and to obtain all requisite regulatory approvals. Merger Agreement § 7.2. Section 8.3(b), in turn, provided that the Company's obligation to consummate the merger would be contingent on the counterparties' performance of the terms of the Merger Agreement "in all material respects." *Id.* § 8.3. Finally, Section 9.1 permitted the Company to terminate the Merger Agreement if, among other things, the counterparties failed to comply with Section 8.3(b) by April 11, 2023. Merger Agreement § 9.1. On April 11, 2023, the Company announced the termination of the merger and specified that the Buyer Defendants had breached Section 7.2(a) of the Agreement. FAC ¶ 39. The Company's share price decreased significantly following that announcement. *Id.* ¶ 41.

Plaintiff, a shareholder in the Company, commenced this action against the Company in New York state court on December 18, 2023, asserting various common law claims. *See* ECF No. 1. The Company removed the action to this Court, *see id.*, and filed a motion to dismiss, which the Court granted without prejudice on grounds of *forum non conveniens*. *See Lu*, 2024 WL 4149869, at *10. On December 3, 2024, Plaintiff filed the operative complaint in this action against the Company as well as Bing Zhang, Ke Chen, and the Buyer Defendants, asserting for the first time the following claims under the Securities Exchange Act: (1) Section 10(b) claims against Cheer and the Buyer Defendants; (2) Section 13(e) claims against Cheer, the Buyer Defendants, and Zhang; and (3) Section 20(a) claims against Zhang and Chen. *See* ECF No. 61 (the "Complaint"). Cheer filed a motion to dismiss the Complaint on December 13, 2024. *See* ECF No. 64 ("Cheer Mot."). On February 14, 2025, the Buyer Defendants joined Cheer's motion and filed a separate motion to dismiss. *See* ECF No. 94. Plaintiff opposes both motions. *See* ECF Nos. 79, 111.

## LEGAL STANDARDS

I.     **Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).[3] In answering this question, the Court must "accept all factual allegations as true, but give no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d at 35 (2d Cir. 2017). The Court may also consider any "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied" in bringing this action. *See ATSI Commc'ns*, 493 F.3d at 98.

II.    **Motions to Dismiss Under Federal Rule of Civil Procedure 9(b) and the PSLRA**

This action for securities fraud is also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Under this standard, a plaintiff alleging fraud "must state with particularity the circumstances constituting" the alleged fraud. Fed. R. Civ. P. 9(b). The PSLRA expressly requires plaintiffs alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading,

---

[3] Unless otherwise indicated, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

and, if an allegation regarding the statement or omission is made on information and belief . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Under the PSLRA and Rule 9(b) pleading requirements, a plaintiff must explain with particularity "the basis for the plaintiff's belief that the omitted fact was known at the time of the statement." *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 202 (S.D.N.Y. 2020). The PSLRA further requires that securities fraud complaints "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(2)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns*, 493 F.3d at 99.

## DISCUSSION

Plaintiff asserts claims under Sections 10(b), 13(e), and 20(a) of the Securities Exchange Act. The Court considers each in turn, mindful that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

**I.    Section 10(b) Claims against Cheer and the Buyer Defendants**

Under Section 10(b) of the Securities Exchange Act, it is

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Rule 10b-5, promulgated by the SEC under Section 10(b) to define "manipulative and

deceptive devices," prohibits persons from "(1) making 'any untrue statement of a material fact' and (2) from 'omit[ting] to state a material fact necessary in order to make [ ] statements made, in the light of the circumstances under which they were made, not misleading' in connection with the purchase or sale of any security." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 174 (2d Cir. 2020) (quoting 17 C.F.R. § 240.10b-5(b)).  While "the first part of this language unambiguously renders untrue statements of fact actionable," "the second part of this language, which does not cabin 'statements' with the modifier 'of a material fact,' renders both statements of fact and those of opinion actionable when such statements would be misleading without the contextualization of material facts." *Id.*

To maintain a private damages action under Section 10(b) and Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

Plaintiff appears to allege that Defendants made three material misrepresentations or omissions in their public filings: (1) two statements suggesting that the merger would in fact close following shareholder approval and satisfaction of all closing conditions, FAC ¶¶ 43–45; (2) a statement that the Company had the right to seek equitable relief to enforce consummation of the merger, *id.* ¶¶ 48–50; and (3) a statement that the Special Committee concluded that the contemplated merger would be more beneficial to the Company's shareholders than remaining a public company, *id.* ¶¶ 51–52.  He argues that these statements concealed both the existence of additional preconditions to merger and the Company's intention not to seek enforcement of the Merger Agreement in the event that the merger failed.  Defendants contend that these allegations

fail to meet the heightened pleading requirements applicable to Plaintiff's claims. The Court considers each statement below.

### A. Statements Concerning Consummation of the Merger

Plaintiff first alleges that the following statement, which appears twice in the Proxy Statement in substantially similar form, was materially misleading:

> Once the Merger Agreement is authorized and approved by the requisite vote of the shareholders of the Company and the other conditions to the consummation of the transactions contemplated by the Merger Agreement are satisfied or waived in accordance with the terms of the Merger Agreement, Merger Sub will merge with and into the Company, with the Company continuing as the surviving company of the Merger ("Surviving Company") under the laws of the Cayman Islands as a wholly-owned subsidiary of Parent.

*Id.* ¶ 43; *see also id.* ¶ 44.

With respect to this statement, he alleges that the Company's stated reason for terminating the Merger Agreement—namely, the Buyer Defendants' failure to satisfy the preconditions set forth in Section 7.2(a)—was false, and that Defendants instead either (1) deliberately concealed that the consummation of the merger was contingent on the absence of shareholder dissent; or (2) deliberately concealed that the consummation of the merger was contingent on the Buyer Defendants obtaining financing, despite that the Company's disclosures affirmatively stated that the merger was not conditioned on the availability of such financing. *Id.* ¶¶ 46–47. He argues that the above portion of the Proxy Statement was misleading because it failed to disclose these purported conditions.

As an initial matter, both the Proxy Statement and the Merger Agreement made clear that consummation of the merger was not guaranteed. *See, e.g.,* Wang Decl. Ex 3 at 34, ECF No. 66-3 ("[W]hile the Special Committee expects to complete the Merger, there can be no assurance that all conditions to the parties' obligations to complete the Merger will be satisfied and, as a result,

7

it is possible that the Merger may not be completed even if Company shareholders approve it."). The Court declines to "attribute to [Plaintiff] a child-like simplicity by presuming [his] incapacity to comprehend" those warnings. *Holbrook v. Trivago N.V.*, No. 17-CV-8348, 2019 WL 948809, at *19 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019).

In any event, Plaintiff's allegations, which he appears to make upon information and belief, fail to "specify . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In support of his allegation that the consummation of the merger was contingent on the absence of shareholder dissent, Plaintiff relies solely on the fact that the Merger Agreement was terminated in close temporal proximity to the Company's receipt of shareholder appraisal notices. "[C]ourts in this district have held that temporal proximity alone does not raise a circumstantial inference of fraud," and this allegation thus does not satisfy the PLSRA standard. *In re Supercom Inc. Sec. Litig.*, No. 15-CV-9650, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018); *see also Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016); *Fant v. Perelman*, No. 97-CV-8435, 1999 WL 199078, at *13 (S.D.N.Y. Apr. 9, 1999). Other than temporal proximity, Plaintiff alleges no facts to support his assertion that there existed additional, undisclosed preconditions to consummation, and instead asserts, in conclusory fashion, that the existence of such preconditions can be "plausibl[y] infer[red]" from the surrounding circumstances. FAC ¶¶ 46–47. In essence, he asks the Court to infer that, because the merger did not succeed, Defendants must have engaged in fraud. The Court declines to do so. These allegations are wholly speculative and are thus insufficient to support a claim under Rule 9(b) or the PSLRA. *See Bond Opportunity Fund v. Unilab Corp.*, 87 Fed. App'x

8

772, 773 (2d Cir. 2004) ("Mere speculation is insufficient to satisfy the PSLRA pleading standard.").

### B. Statements Concerning the Remedies Available to Cheer and the Special Committee's Recommendation

Plaintiff next contends that the following statements were materially misleading:

> The Company has the right to obtain an injunction, specific performance or other equitable relief to enforce Parent's and Merger Sub's obligations to consummate the Merger and other transactions contemplated by the Merger Agreement and the Plan of Merger only if (i) all of the conditions to closing for the obligations of Parent and Merger Sub (other than those conditions that by their nature are to be satisfied by actions taken at the closing) to consummate the Merger have been satisfied or duly waived and (ii) the Company has irrevocably confirmed by notice to Parent that all conditions to closing for the obligations of the Company have been satisfied, or that it is willing to waive any unsatisfied condition.

FAC ¶ 48.

> The Special Committee has concluded that it is more beneficial to the unaffiliated security holders to enter into the Merger Agreement and pursue the consummation of the transactions contemplated by the Merger Agreement, including the Merger, and become a private company rather than to remain a public company.

FAC ¶ 51.

Plaintiff alleges that these statements were misleading because (1) the Company did not exercise its right to seek enforcement of the consummation of the merger, and thus—at the time it made the statement—it must not have intended to exercise that right in the future; and (2) because the Company did not exercise that right, the Special Committee must not have genuinely believed that pursuing the consummation of the merger was more beneficial than remaining a public company. These allegations fail for the same reasons discussed above—namely, that they do not specify the facts upon which they are formed. *See* 15 U.S.C. § 78u-4(b)(1). Insofar as they are based on the fact that the Company did not attempt to enforce the Merger Agreement, they fail

9

nonetheless, as they are speculative, conclusory, and implausible. The Merger Agreement merely gave the Company the right to enforce the Merger Agreement. "A right, by nature, is not an obligation," *Gwozdzinsky on Behalf of Revco D.S., Inc. v. Magten Asset Mgmt. Corp.*, 106 F.3d 469, 471 (2d Cir. 1997), and thus the Company did not mislead shareholders by informing them of the right without disclosing whether it intended to pursue it. Moreover, the unambiguous terms of the Merger Agreement explicitly conditioned the right on the satisfaction or waiver of all preconditions, which—per the Company's disclosure—Buyer Defendants ultimately failed to achieve. *See* FAC ¶ 39. In essence, then, Plaintiff alleges that the Company misled shareholders by failing to exercise a right that it did not have. That allegation is entirely implausible.

Accordingly, the motion to dismiss is granted with respect to Plaintiff's Section 10(b) claims.

**II.     Section 13(e) Claim against Cheer and the Buyer Defendants**

Section 13(e) of the Exchange Act requires companies buying publicly listed securities from shareholders in a going-private transaction to comply with certain rules established by the SEC. As relevant here, Rule 13e-3(e), which the SEC promulgated pursuant to Section 13(e), makes it unlawful for a company engaged in a going private transaction to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.13e-3(b)(1).

"As courts in this district have previously recognized, whether [Section] 13(e) authorizes private suits remains an unsettled issue." *In re E-House Sec. Litig.*, No. 20-CV-2943, 2021 WL 4461777, at *17 (S.D.N.Y. Sept. 29, 2021), *aff'd sub nom. Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, No. 22-355, 2024 WL 2890968 (2d Cir. June 10, 2024) (collecting cases).

The Court need not decide that issue, however, because Plaintiff has not adequately alleged an actionable misrepresentation. His Section 13(e) claims fail for the reasons discussed above.

Accordingly, the motion to dismiss is granted with respect to Plaintiff's Section 13(e) claims against Cheer and the Buyer Defendants.

### III. Leave to Amend

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A district court ordinarily should not dismiss a *pro se* complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, leave may be denied in instances of "repeated failure to cure deficiencies by amendments previously allowed," *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008), "when a plaintiff attempts to assert new facts or theories he could have raised sooner," *Nkansah v. United States*, No. 18-CV-10230, 2025 WL 945848, at *5 (S.D.N.Y. Mar. 28, 2025), or where repleading would be futile, *Cuoco*, 222 F.3d at 112.

The Court dismissed Plaintiff's original complaint—which asserted only common law causes of action—on *forum non conveniens* grounds. In that Order, the Court stated that it was "skeptical that any amendment Plaintiff may make w[ould] affect its *forum non conveniens* analysis," but, given that he is proceeding *pro se*, it "nonetheless grant[ed] him leave to file an amended complaint—provided he ha[d] a good faith basis to do so." *Lu*, 2024 WL 4149869, at *10. In response, nearly a year after filing his initial complaint, Plaintiff amended his complaint to assert new facts and an entirely new theory of liability under the federal securities laws.

Given that the Court has already permitted Plaintiff to amend once, and that Plaintiff now

11

asserts wholly new facts and claims that he could have raised in his initial complaint, the Court will not permit him another opportunity to amend. *See Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *3 (2d Cir. June 21, 2024) (finding denial of leave to amend proper where plaintiff waited thirteen months after filing his initial complaint to seek leave to assert new theories of liability based on the same underlying facts); *United States v. Cardroom Int'l, LLC*, 726 F. App'x 98, 100 (2d Cir. 2018) (finding denial of leave proper where party "sought leave to amend to assert a totally new theory over a year after it filed its initial claim, and . . . the facts underlying its new theory were clearly available to it when it filed its initial claim").

Moreover, the Court's liberal reading of the Complaint does not "suggest[] that [P]laintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco*, 222 F.3d at 112. Rather, "the problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Id.* Repleading would therefore also be futile.

Accordingly, Plaintiff's request for leave to amend is denied.

**IV.    Claims against Non-Moving Defendants**

Plaintiff also brings a Section 13(e) claim against Zhang, and Section 20(a) claims against Zhang and Chen, neither of whom appears to have been served or has filed a motion to dismiss. "While dismissing a complaint as to a non-moving defendant is not an ordinary practice, a district court may dismiss claims *sua sponte* for failure to state a claim, particularly where a defendant has neither been served nor appeared." *Cummings v. City of New York*, No. 19-CV-7723, 2021 WL 1163654, at *16 (S.D.N.Y. Mar. 26, 2021). "However, the plaintiff must be given notice and opportunity to be heard on the issue." *Id.* (collecting cases).

As discussed above, Plaintiff fails to state a Section 13(e) claim, and his claim against

Zhang under that Section should thus be dismissed. With respect to his Section 20(a) claims against Zhang and Chen, that Section imposes liability on "every person who, directly or indirectly, controls any person liable" for securities fraud. 15 U.S.C. § 78t(a). "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108. Section 20(a) claims therefore require a primary violation of the Exchange Act. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011). For the reasons stated above, Plaintiff has not plausibly alleged a primary violation, and it thus appears from the face of the Complaint that he fails to state a Section 20(a) claim.

Accordingly, no later than one week from the date of this Order, Plaintiff shall submit a letter advising the Court whether he objects to the dismissal with prejudice of his claims against Zhang and Chen, and if so, shall state his basis therefor.

### V.     PLSRA Sanctions

Although Defendants style their motions as seeking sanctions against Plaintiff, Cheer's motion indicates that it intends to file a separate memorandum in support of that application. *See* Cheer Mot. at 24. It has not done so. Accordingly, the motion for sanctions is denied without prejudice. To the extent that Defendants still intend to seek sanctions against Plaintiff—notwithstanding the "greater leniency" afforded to *pro se* litigants, *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005), *aff'd sub nom. Smith v. The Educ. People, Inc.*, No. 05-2971-CV(L), 2008 WL 749564 (2d Cir. Mar. 20, 2008) (collecting cases)—they may file a renewed motion within thirty (30) days of the date of this Order, together with a supplemental memorandum of law.

## CONCLUSION

For the foregoing reasons, the claims against Defendants Cheer Holding, Inc., Cheers, Inc., and GSMG Ltd. are dismissed with prejudice. No later than one week from the date of this Order, Plaintiff shall submit a letter advising the Court whether he objects to the dismissal with prejudice of his claims against Zhang and Chen, and if so, stating his basis therefor. Additionally, Defendants may file a renewed motion for sanctions and accompanying memorandum of law within thirty days of the date of this Order. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 64 and 94.

SO ORDERED.

Dated:   August 14, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge